## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

SAMUEL J. PRIMAS,

      **Plaintiff,**

      v.                              **Case No. 25-C-796**

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY,
*d/b/a* Good Samaritan Society Scandia Village,

      **Defendant.**

---

## ORDER DENYING MOTION TO DISMISS

---

Plaintiff Samuel J. Primas, proceeding *pro se*, filed this Title VII action against Defendant The Evangelical Lutheran Good Samaritan Society, doing business as Good Samaritan Scandia Village (Scandia), a senior living facility located in Door County, Wisconsin. Second Am. Compl. (SAC), Dkt No. 17. The case is before the court on Scandia's motion to dismiss on the ground that Primas' suit is untimely, as it was filed more than ninety days after he received notice of his right to sue.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). In considering a motion to dismiss, the court construes all allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). In deciding a Rule 12(b)(6) motion to dismiss, a court may consider the complaint and any exhibits attached thereto, public records, and exhibits attached to the motion

to dismiss so long as they are referred to in the complaint and are central to the claims. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

In his SAC, Primas identifies himself as "an African American man and a member of the LGBTQ community." SAC ¶ 1. He states he was a traveling Certified Nursing Assistant (CNA) who was assigned to work at Scandia Village. Primas alleges that he "personally experienced repeated racial harassment from residents and staff, including being called 'slave,' 'colored one,' and hearing staff use the N-word when discussing Black employees." *Id.* ¶ 10. Primas further alleges that he "also experienced discrimination based on sexual orientation. Staff made comments about his marriage and foster children, including statements that 'two men with foster kids would never fly here.'" *Id.* ¶ 11. Within 24 hours of reporting these incidents to Scandia's Employee Relations Specialist, Primas alleges staff began retaliating against him by accusing him of "playing the Black card," mocking him, and treating him with hostility. *Id.* ¶ 13. "Due to escalating hostility, discrimination, and retaliation," Primas alleges he "was compelled to leave the assignment in late May 2022." *Id.* ¶ 16. The SAC asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for discrimination based on race and sexual orientation, retaliation, hostile workplace, and constructive discharge.

Scandia argues that Primas' suit is untimely because it was filed more than ninety days after he received notice of his right to sue. Once the United States Equal Employment Opportunity Commission (EEOC) gives a claimant/plaintiff notice of his right to sue, he has ninety days to file his lawsuit. 42 U.S.C. § 2000e-5(f)(1). The Seventh Circuit has held that "the 90-day Title VII clock begins ticking not when the plaintiff reads the right-to-sue letter, but as soon as the plaintiff is on notice the letter has issued." *Kinder v. Marion Cnty. Prosecutor's Office*, 132 F.4th 1005, 1008 (7th Cir. 2025). Thus, when notice is sent to a claimant by traditional mail, the filing period

is triggered by receipt of the letter, not when the recipient opens the letter and reads the notice. *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 849–50 (7th Cir. 2001). Likewise, when the notice is sent electronically, the ninety-day limitation begins to run on the date the claimant has notice that the EEOC has closed its investigation, even if the claimant is unable to access the right-to-sue letter on that date. *Kinder*, 132 F.4th at 1009; *see also Lax v. Mayorkas*, 20 F.4th 1178, 1182–83 (7th Cir. 2021) (holding that ninety-day period is triggered upon claimant's receipt of email, which clearly indicated that his final agency decision was attached, even though claimant could not open attachment until the next day). Still, some kind of notice to the claimant is required to trigger the ninety-day period within which the complaint is required to be filed.

In this case, there is no dispute that "[t]he EEOC issued Plaintiff a Right-to-Sue Notice on February 26, 2025." SAC ¶ 5. Primas alleges as much in the SAC. If that is the day Primas received the notice, then the ninety-day filing period expired on May 28, 2025. The docket reflects that the action was not filed, however, until Monday, June 2, 2025, the same day it was received by the Clerk of Court. Dkt. No. 1. This is consistent with the UPS Shipment Receipt Primas attached to Primas' brief in opposition to Scandia's motion to dismiss. The receipt shows a May 23, 2025, shipping date of a package to Clerk of Court for the Eastern District of Wisconsin with an expected delivery date of June 2, 2025. Dkt. No. 22-1 at 12. Curiously, Primas also attached a UPS receipt dated May 27, 2025, for a package with the same tracking number. Dkt. No. 22-1 at 11. In any event, Primas' complaint was not filed until June 2, 2025, five days after the ninety-day limitation period from February 26, 2025, expired. Scandia contends that Primas' action is therefore untimely and must be dismissed.

The ninety-day filing period is not a jurisdictional prerequisite to filing a Title VII suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). But it is a requirement and, as

such, is subject to waiver, estoppel, and equitable tolling "when equity so requires." *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)).  Primas argues that there are equitable reasons for tolling the ninety-day limitation period that at the very least warrant granting him leave to file a third amended complaint.  He acknowledges that the EEOC electronically delivered his right to sue notice on February 26, 2025, but contends it was in a format he was unable to access.  Primas contends he notified the EEOC of the problem on March 6, 2025, and thereafter received an accessible electronic copy of the letter.  Primas asserts that he has diligently pursued his case by corresponding with the EEOC and the Clerk of Court in an effort to comply with the applicable deadlines.  As a further example of his diligence, Primas states that he mailed his complaint to the Clerk of Court via UPS Ground Commercial on May 27, 2025, the final day before the ninety-day period, and contacted the Clerk of Court to advise the Clerk of the time-sensitive nature of his filing.  Dkt. No. 22 at 4.  Based on his diligence in pursuing his case, Primas argues the ninety-day limitation should be tolled.

It is clear from his own filings that Primas believed that the ninety-day limitation period would run on May 28, 2025.  Yet, he waited until May 27, 2025, to mail his complaint to the Clerk.  This hardly shows diligence of the type that would warrant tolling the ninety-day time period.  But it is unclear on this record whether Primas needs the running of the time period to be tolled in the first place.

This is because it is unclear from the record when Primas was first able to access the notice of his right-to-sue letter or otherwise knew that the ninety-day period was triggered.  Unlike *Lax*, the body of the email sent to Primas is not a part of the record.  *See* 20 F.4th at 1180–81.  Thus, the court cannot say that reading the email, by itself, would have provided the required notice.  It would seem doubtful under *Lax* or *Kinder* that the February 26, 2025, email from the EEOC would

4

have triggered the ninety-day period unless it provided Primas with some notice that his case was closed, especially since he is *pro se*. If Primas first received notice sometime after March 6, 2025, then the ninety-day period may have been triggered at that time, and his complaint may be timely. Scandia argues that Primas' own documents show that he was unable to access his own email to the EEOC, not the EEOC's letter to him. In the court's view, this is not clear from the documents.

Accordingly, Scandia's motion to dismiss on the record as it now stands will be denied. But this does not mean that Scandia will be forced to incur the costs and expense of full discovery and trial if, as it contends, the suit is untimely. Given the threshold nature of the issue, it may lend itself to resolution using the court's streamlined summary judgment procedure described in the Instructions for Litigants at the district's website, which can be found at this link: https://www.wied.uscourts.gov/judges/william-c-griesbach. For now, however, Scandia's motion to dismiss (Dkt. No. 19) is **DENIED** and the Clerk is directed to set this matter on the court's calendar for a telephone scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 21st day of January, 2026.

William C. Griesbach
United States District Judge