**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

SAMUEL J. PRIMAS,

       **Plaintiff,**

       **v.**                         **Case No. 25-C-796**

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY,
*d/b/a* Good Samaritan Society Scandia Village,

       **Defendant.**

---

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Samuel J. Primas, proceeding *pro se*, filed this Title VII action against Defendant The Evangelical Lutheran Good Samaritan Society, doing business as Good Samaritan Society Scandia Village (Scandia), a senior living facility located in Door County, Wisconsin.  Second Am. Compl. (SAC), Dkt No. 17.  Primas alleges he faced discrimination and abuse on the basis of his race (black) and sexual orientation (homosexual), and has asserted claims for retaliation, hostile workplace, and constructive discharge.

Scandia previously moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Primas had failed to file his complaint within 90 days of receipt of a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), as Title VII requires.  42 U.S.C. § 2000e-5(f)(1).  There is no dispute that the EEOC had issued Primas a right-to-sue letter at his request on February 26, 2025.  There is also no dispute that Primas' original complaint was filed on June 2, 2025, at least five days after the 90-day limitation period.  Based on these undisputed facts, Scandia argued that the case should be dismissed.  In response to Scandia's motion, however,

Primas asserted that he did not have access to the right-to-sue letter until after March 6, 2025, and thus did not know his case was closed until on or after that date. If true, the 90-day time limit did not begin to run until then. *See Kinder v. Marion Cnty. Prosecutor's Office*, 132 F.4th 1005, 1008 (7th Cir. 2025) ("Our court holds that the 90-day Title VII clock begins ticking not when the plaintiff reads the right-to-sue letter, but as soon as the plaintiff is on notice the letter has issued."). Because the pleadings did not conclusively establish when Primas knew when the right-to-sue letter had been issued, the court denied Scandia's motion to dismiss. Dkt. No. 25. But given the threshold nature of the issue and the likelihood that a more complete record would allow a prompt determination of the issue, the court invited Scandia to promptly move for summary judgment if it was able to definitively show Primas' complaint was untimely. *Id.* at 5.

Scandia has now done so based on evidence that conclusively establishes that Primas was aware a right-to-sue letter had been issued in his case on February 26, 2025. Primas acknowledges his EEOC portal listed two new documents on February 26, 2025: a PDF titled "2025-02-26 02831 Closure Notice-NRTS-.pdf"; and an .msg file titled "2025-02-26 02831 Request for Right to Sue Letter Case.msg." Dkt. No. 36 at 3; *see also* Dkt. Nos. 33-1 at 10, 33-5 at 1, 33-10 at 9. The "Closure Notice-NRTS-.pdf" was his Notice of Right To Sue letter. Primas asserts he did not review the "Closure Notice-NRTS-.pdf" and attempted instead to access the "Request for Right to Sue Letter" document, which was his own email requesting a right-to-sue letter. *See* Primas Decl. ¶¶ 4–6, Dkt. No. 37. He argues that the "generic portal alert," delivered via email and stating that a "new document was added" to his EEOC portal, was insufficient to put him on notice because it "did not say that Plaintiff's charge was closed, did not identify a final agency decision, did not identify the document as a Notice of Right to Sue, and did not announce a filing deadline."

Primas' arguments and attempts to distinguish *Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 20210, are unconvincing. In *Lax*, the court held that the plaintiff's receipt of an email indicating the "Agency's Final Action" was attached was enough to start the ninety-day clock, even though he could not open the attachment until the next day, because it was clear the plaintiff had received the final agency decision. *Id.* at 1183. Here, similarly, on February 26, 2025, Primas emailed EEOC investigator Kimberly Knighten requesting a right-to-sue letter. Later that same day, he received an email alerting him to a new document in his portal. Then, Primas visited his portal, where a new document with the title "Closure Notice-NRTS-.pdf" was accessible. The "Closure Notice" document is just as clear as the "Agency's Final Action" email in *Lax*—both indicate the "'charge was closed with the EEOC,' and that [the plaintiff] knew the right-to-sue letter was available in the portal." *Kinder*, 132 F.4th at 1009. Even though Primas claims he either ignored or otherwise failed to notice the "Closure Notice" document, he concedes he received the email and logged in to his portal on February 26, 2026, and the record shows the PDF was accessible. Would-be plaintiffs cannot evade the ninety-day clock by ignoring newly uploaded documents in the EEOC portal. That is enough to put Primas on notice that his charge had been closed.

As if "Closure Notice-NRTS-.pdf" was not enough on its own, Primas conceded that he understood the right-to-sue letter was issued on February 26, 2025. He testified: "My contention is that the file that I received on February 26th after I requested my Right to Sue and receiving that said notification after, was that it was my Right to Sue letter, titled - - I understood it was my Right to Sue letter." Primas Dep. 46:24–4703, Dkt. No. 33-3 at 11–12. He confirmed that he believed his right-to-sue letter had been issued in his pleadings, discovery responses, and declaration, although he mistakenly thought the .msg file in his portal was the right-to-sue letter. And the circumstances surrounding its issuance—Primas' multiple conversations with EEOC personnel

3

and the subsequent email notification that a new document had been uploaded—further support the conclusion that adequate notice had been given. There is no plausible dispute that Primas was aware his right-to-sue letter had been issued and uploaded on February 26, 2026. The court need not address Primas' arguments regarding his attempts to access the .msg file, as even those attempts evidence his belief that his right-to-sue letter had been issued on that date. In sum: Primas' filing was untimely.

Primas again argues, as he did in response to Scandia's motion to dismiss, that even if his filing was untimely, equitable tolling should apply. The ninety-day filing period is not a jurisdictional prerequisite to filing a Title VII suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). But it is a requirement and, as such, is subject to waiver, estoppel, and equitable tolling "when equity so requires." *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)). "Equitable tolling . . . is reserved for situations in which the claimant 'has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Lax*, 20 F.4th at 1183 (quoting *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001)). Here, as the court explained in its earlier order, "[i]t is clear from his own filings that Primas believed that the ninety-day limitation period would run on May 28, 2025. Yet, he waited until May 27, 2025, to mail his complaint to the Clerk. This hardly shows diligence of the type that would warrant tolling the ninety-day time period." Dkt. No. 25 at 4. Nor has Primas shown any other extraordinary circumstance preventing him from filing his complaint in time. The court will decline to apply equitable tolling in this circumstance.

**CONCLUSION**

For the reasons set forth above, Scandia's motion for summary judgment (Dkt. No. 31) is

**GRANTED**, and the case is dismissed.  The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of July, 2026.

_____
William C. Griesbach
United States District Judge

5